1  RANDY SUE POLLOCK
   Attorney at Law (CSBN 64493)
2  286 Santa Clara Avenue
   Oakland, CA 94610
3  Telephone: 510-763-9967
   Facsimile: 510-380-6551
4  rsp@rspollocklaw.com

5  Attorney for Defendant
   TIMOTHY ALLEN MANLY WILLIAMS

6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9                          OAKLAND DIVISION

10

11  UNITED STATES OF AMERICA,              **CR 4:23-cr-00267-JSW-DMR**

12          Plaintiff,

13      v.                                 **SENTENCING MEMORANDUM AND**
                                           **MOTION FOR VARIANCE**
14                                         **ON BEHALF OF TIMOTHY MANLY**
                                           **WILLIAMS**
15  TIMOTHY ALLEN MANLY WILLIAMS

16          Defendant.

17  _____ /    **Sentencing Date:  January 13, 2026**
                                           **Sentencing Time: 1 p.m.**
18

19                           **INTRODUCTION**

20

21      Mr. Manly Williams is a man who should not be standing in a federal court for

22  sentencing. The charges he pled guilty to were serious.  This case represents one of the most

23  important prosecutions brought by the U.S. Attorney's Office to get rid of dirty police officers in

24  the Antioch Police Department (APD).   Mr. Manly Williams, a man who was born and raised in

25  Antioch, began his career as a police officer to help the citizens in Antioch.  Instead, he became

26  part of the culture of lawlessness that was prevalent in that police force.

27      This memorandum and the accompanying character reference letters and Mr. Williams'

28  letter (**Exhibit A**) will explain why a man with impeccable qualities of integrity, discipline and

1  dedication brought shame to his name, to his family, to his professional colleagues and to his

2  community.

3      Mr. Manly Williams immediately acknowledged responsibility for his actions and has

4  shown sincere remorse. Although he has been fearfully anticipating his day before this court, he

5  has used the past two plus years while on pretrial release to engage in meaningful work,

6  important volunteer groups, self-reflection, and deep devotion to the well-being of his family.

7      Mr. Williams' actions are a complete aberration from his otherwise law-abiding life.  He

8  asks this Court to sentence him to a period of probation coupled with community service that

9  will allow him to keep the job he has had for the past two years.

10                                                    I.

11                              **BACKGROUND OF THE CASE**

12      Mr. Williams was indicted on August 16, 2023.  Within one month of that date, he met

13  with the government to admit his wrong-doing and answer their questions. He entered his plea

14  of guilty on November 28, 2023.  His guideline offense level is 15 which calls for a sentencing

15  range of 18-24 months.  He is not entitled to a reduction of points as a zero offender as Count III

16  involves him hitting a cellphone out of a person's hand.  He pled guilty to other misconduct in

17  Contra Costa Superior Court on December 21, 2023, and will receive a concurrent sentence on

18  January 20th by the Honorable John Kennedy.  Probation has recommended a sentence of three

19  years probation coupled with community service.

20                                                   II.

21                        **MR. WILLIAMS POST-OFFENSE CONDUCT**

22                                  **WARRANTS A VARIANCE**

23      One of the goals of sentencing is rehabilitation.  A defendant's admission of

24  responsibility is "often a significant first step towards his rehabilitation and, for that reason,

25  deserving of a possible reward in the form of a lessened sentence. See *Smith v. Wainwright*,

26  664 F.2d 1194, 1196 (11th Cir. 1981).  Additionally, a defendant's efforts to rehabilitate

27

28  themselves have been seen by courts as important in swaying judge's decisions at sentencing.

See *Booker at Seven: Looking Behind Sentencing Decisions: What is Motivating Judges?* 65 Ark.L.Rev.529,572-73 (2012). In this case Mr. Williams has not only demonstrated an extraordinary acceptance of responsibility by quickly acknowledging his conduct, but also by demonstrating his self-improvement and fundamental changes in attitude and conduct.

## A. His Decision to Cooperate

Mr. Williams immediately decided to cooperate and meet with the authorities to admit his wrongdoings. As he explained on March 7, 2025, during his testimony in the Amiri trial:

"*Question*: Why is it that you are testifying today...

*Answer*:  I am testifying today because this is my way of acknowledging my fault in what I have done.  And also, my way of showing remorse in what I have done as well."

Vol. 6, pages 1278:10-18.

When Mr. Williams first met with the government the FBI case agents were very skeptical of him and with good reason.  He had violated his oath as a fellow law enforcement officer and committed offenses, particularly the interruption of a federal wiretap, which violated the oath of a sworn peace officer. As tense as that first meeting was, his meetings continued with the government and his candor with them was evident.  He did not seek at any time to justify or mitigate any of his actions.

While the government will write their separate memorandum regarding Mr. Williams' cooperation, the Court has discretion under §3553(a)(1) to consider it.  When departing downward, a court must evaluate a defendant's cooperation on an individualized basis.  See *United States v. King*, 53 F.3d 589,590-92 (3rd Cir. 1995).  In this case, there was no hesitation on Mr. Williams' part in his decision to cooperate.  He was the first officer charged to come forward to cooperate.  He owned his conduct immediately and accepted full responsibility for

SENTENCING MEMORANDUM
UNITED STATES VS. MANLY WILLIAMS, CR. 23-267-JSW

his actions.

## B. Mr. Williams Post-Offense Conduct

Since his arrest in August 2023, Mr. Williams has been employed as a Special Education teacher at Heritage High School in Brentwood. It is a job that gives him purpose and one that he enjoys. The school hired him with knowledge of these pending charges, and in addition to teaching he has been working on obtaining his teacher's credential. During this time, he has also engaged in volunteer activities that are meaningful to him---the Contra Costa Food Bank, the Prison Literature Project and mentoring youth in sports.

## C. Mr. Williams' Performance on Pretrial Supervision

Mr. Williams has been under pretrial supervision since August 2023. During that time there were no violations. The significance of how an offender performs on pretrial supervision was explained in a study published in the *Federal Probation*. The journal noted the "importance of a defendant's success on pretrial services supervision as a harbinger of improved outcomes in subsequent stages of the criminal justice system," including "reduced failures during post-conviction supervision.[1] Courts in other districts have recognized the importance of 'good behavior' while on pretrial supervision. In *United States v. Munoz-Nava*, 524 F.3d 1137 (10 Cir. 2008), the court said that "defendant's behavior while on a year-and-a-half pretrial release was exemplary and showed the defendant was unlikely to reoffend. See also *United States v. Baker*, 502 F.3d 465 (6th Cir. 2007).

---

[1] Barber, et al, "A Viable Alternative? Alternatives to Incarceration Across Seven Federal Districts," *Federal Probation*, Vol. 83, no. 1, pg.8 (June 2019), available at https://www.uscourts.gov/sites/default/files/83_1_2_0.pdf.

SENTENCING MEMORANDUM
UNITED STATES VS. MANLY WILLIAMS, CR. 23-267-JSW

### D. Mr. Williams is Respected by his Family and Friends

All the letters submitted on behalf of Mr. Williams recognize attributes that reflect the core values his family adheres to ---faith, education, and service to others.  **Exhibit B**. Mr. Williams is described by his family and friends as a man who consistently demonstrates responsibility, reliability, and kindness toward others.

His twin brother Therian Manly Williams writes as follows:

If I were asked to describe his character in a single word, it would be Soulful. He has never defined himself by attention, status, or recognition. Instead, he has consistently led with warmth, humility, and a genuine ability to connect with people from all walks of life. He listens carefully, treats others with respect, and carries himself with a quiet sense of responsibility toward those around him.

Growing up, we were taught the importance of reaching back and lifting others as we moved forward. Timothy embraced that lesson in a way that directly shaped my own life. While his athletic ability allowed him to excel as a high school and collegiate basketball player, my path required persistence and opportunity. Despite his success, Timothy never pursued opportunities unless I was included alongside him. His willingness to advocate for me and bring me into meaningful spaces directly influenced my educational and professional journey.

Mr. Therian Manly Williams writes regarding Mr. Williams' pending charges:

I am aware that Timothy has been charged with serious offenses, and I do not seek to minimize the gravity of these matters or the Court's responsibility in addressing them. When I first learned of the situation, I was deeply upset, as it felt inconsistent with how we were raised and the values we were taught to uphold. When Timothy spoke with me about what had occurred, he was visibly embarrassed, remorseful, and deeply disappointed in himself. He expressed genuine concern not only for the consequences he faces, but for how his actions reflected on our family and the community he has always sought to serve.

Since that time, I have seen Timothy engage in sincere self-reflection and take responsibility for the consequences before him. I have observed humility, accountability, and a genuine effort to learn from this experience. His decision to return to serving others by working as a teacher at Heritage High School, supporting students with learning disabilities, further reinforced my belief that this conduct is not representative of the values he has demonstrated throughout his life.

One of his oldest friends, Wayne Hunter, a basketball coach at Stanford writes as follows:

Timothy is the kind of person who lifts others up. He has always been a natural leader—
not because of titles or recognition, but because of his ability to inspire trust and
confidence in those around him. I've seen him go out of his way to help teammates
through personal struggles, volunteer his time to mentor younger athletes, and show
genuine care for people from all walks of life. He approaches every relationship with
respect and empathy, and he has a gift for making others feel valued and supported.
These qualities aren't just surface level; they are deeply ingrained in who he is.

The charges he faces today do not reflect the man I know. Timothy has built his life on
principles of hard work, accountability, and service to others. When challenges arise, he
doesn't run, he faces them head-on with humility and determination. I have no doubt that
he will take responsibility for his actions and use this experience as an opportunity for
growth. Timothy is not defined by this moment; he is defined by years of integrity,
leadership, and positive impact on his community.

Mr. Williams' family understand the significance of this conviction.  His Aunt Sandra
Evers-Manly writes as follows in his support:

Our family fully understands and acknowledges the seriousness of the decisions that have
brought Timothy before this court. These were significant and harmful choices, and we
do not minimize their impact. Timothy is aware of the consequences of his actions and
has expressed deep remorse for the harm caused. He understands that accountability is
necessary and that this is a pivotal moment in his life.

Despite these decisions, I believe they do not represent the entirety of Timothy's
character or his potential for redemption. He has demonstrated a sincere willingness to
learn from this experience and to take meaningful steps toward change. Our family is
committed to providing him with the structure, guidance, and accountability he needs to
succeed. He will not face this challenge alone.

His other aunt Dr. Shirley Evers Manly adds her perspective:

While Timothy is currently facing serious legal challenges, I firmly believe these
circumstances do not define who he truly is. Life sometimes presents difficult situations
and people make mistakes, but I know Timothy to be someone who learns from adversity
and strives to become better. He has expressed remorse and a sincere desire to make
amends, and I am confident that given the opportunity he will take the necessary steps to
rebuild his life and contribute positively to society.

Our family stands ready to support Timothy during this time. He has a strong network of
loved ones who will provide guidance, accountability, and encouragement as he moves
forward. I respectfully ask that you consider Timothy's lifelong character, his
contributions to his community, and the values instilled in him by our family. He is not

without hope and with the right support and opportunity I believe he can return to being the person we all know him to be, a man of faith, integrity, and compassion.

Another reflection about Mr. Williams' character is presented by his friend Dr. Sena:

While I am aware of Tim's charges, I have been awe-struck by how he has navigated this time. Particularly, how he's used this time and coped with the aftermath of these charges. Often in my work as a psychologist, I have seen how guilt and shame have led patients to hide these emotions, mask the truth, and make poor decisions. Further, this suppression of emotions creates greater distress and negative behaviors, and it maintains injustices. However, Tim has fully leaned into his truth, acknowledged his wrongs, expressed guilt and shame, and made every attempt to cope positively with these feelings. He has fully embraced his faith, community, and love for others, living visibly, authentically, honestly, and intentionally in our society. I wholeheartedly believe Tim deserves complete mercy.

Mr. Williams' former high school basketball coach, Drew Torres, wrote as follows:

While Timothy's career in law enforcement did not end as intended, what stood out to me is how he responded afterward. He did not avoid responsibility or distance himself from the consequences of his actions. Instead, he expressed a sincere desire to make amends and to continue serving his community in a positive and constructive way. That willingness to confront his mistakes and redirect his efforts speaks volumes about his character and capacity for growth.

More important are the words that Mr. Williams' mother wrote:

Timothy was raised in a home where family, responsibility, respect, and accountability were not just words, but expectations. From a young age, I taught my children that their actions matter, that integrity means doing the right thing even when no one is watching, and that mistakes must be owned, not avoided. We believed in hard work, honesty, and giving back to others, and those principles were reinforced every day in our household.

As a mother, I have always known Timothy to be a caring and protective person, especially when it comes to family. He has consistently stepped into roles of responsibility, not because he was asked to, but because he felt it was the right thing to do. He has shown compassion, patience, and a willingness to put others before himself, particularly with younger family members who look up to him for guidance and stability.

I want to be clear that I do not excuse the poor decisions that brought my son before this Court. Timothy understands that he made serious mistakes, and he has taken

responsibility for them. That accountability is something I raised him to embrace, even when it is painful. What has been most difficult for me as a parent is seeing the weight of regret he carries, not out of fear of consequences, but because he knows his actions fell short of the values he was raised with.

Despite this, I believe strongly that this situation does not define who Timothy is at his core. He is not beyond redemption, nor is he incapable of growth. I have seen firsthand his commitment to self-reflection and his desire to become a better man, not only for himself, but for his family and those who depend on him. He understands that change is not proven by words alone, but by consistent actions over time.

The comments in all Mr. Williams' character reference letters reflect that he is a good man, with good core values who unfortunately lost sight of those values in a job that required him to be a role model of integrity.

## III.

## SENTENCING ARGUMENT

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241,247 (1949). This principle requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States,* 552 U.S. 38,52 (2007 (quotations omitted). The factors detailed in 18 U.S.C 3553(a) assist the Court in fulfilling this mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). The sentence recommended in the Sentencing Guidelines is only one factor for the district courts to consider in making this judgment, and it may not be weighed more heavily than any other

§3553(a) factor. *Gall*, 552 U.S. at 50; also *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

Mr. Williams has expressed deep remorse for his actions and accepted criminal responsibility quickly after he was charged. He is now in a new career and only has 20 units left to complete his teaching credential. He is working with students who have complex learning issues and demand extra patience. He is committed to working in this specific field of education as well as mentoring youth in sports. While his offense conduct was egregious, he has shown genuine remorse for what he did. He respectfully requests this Court follow the recommendation of probation and place him on probation for three years with a component of community service.

A. **Seriousness of the Offense, Respect for the Law, and Just Punishment.**

The Supreme Court has explained that the factors encompassing "seriousness of the offense," the need to "promote respect for the law," and "provide just punishment for the offense" are the sentencing rationales for retribution. See *Tapia v. United States*, 564 U.S. 319, 326 (2011) and 18 U.S.C. §3553(a)(2)(A). While retribution is a recognized factor to consider in sentencing, the Supreme Court has warned "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54.

Mr. Williams immediately acknowledged his conduct, and while he understands that punishment is necessary, that has been accomplished by this felony conviction which will be on his record forever. He has been under court-ordered supervision for the two plus years and will continue to be supervised---and accountable to the Court---for the foreseeable future.

**B. Deterring Criminal Conduct and Protecting the Public.**

Mr. Williams is not a threat to the public. While his conduct was a severe breach of his oath as a peace officer, Mr. Williams' individualized characteristics lend far more to a non-custodial sentence. As the letters to the Court and Mr. Hills's letter attest, this case has caused him to reexamine himself and to understand the root causes that brought him to this moment in his life.

**C. Mr. Williams' Post Offense Rehabilitation Demonstrates he has been Deterred.**

Because a sentencing judge must "consider [] the whole person before him or her as an individual," they must consider [] the defendant on that day, not on the date of his offense or the date of his conviction." *Concepcion v. United States*, 142 S. Ct. 2389, 2395-96 (2022). The Court has also recognized that post-sentencing or post-offense rehabilitation---particularly considering its tendency to reveal a defendant's likelihood of future criminal conduct---[is] a *critical factor* to consider in the imposition of a sentence. *United States v. Trujillo*, 713 F.,3d 1003, 1010 (9th Cir. 2013). (emphasis added).

This criminal prosecution has weighed heavily on Mr. Williams. He is resolved to commit himself to a law-abiding life and to serve his community in lawful ways.

**D. General Deterrence Is Satisfied with a Non-Custodial Sentence**

Section 3553(a)(2)(B) requires a judge to consider "the need for the sentence imposed …to afford adequate deterrence to criminal conduct. General deterrence can be used as justification for a custodial sentence for every offense to the exclusion of specific deterrence. The court in *Barker*, supra 771 F.2d, at 31-33, is instructive regarding the proper use of this factor:

We do not find this desire to "send a message" through sentencing inappropriate per se. Indeed, perhaps paramount among the purposes of punishment is the desire to deter similar misconduct by others. This doctrine, commonly called "general deterrence," boasts an impressive lineage, was long-recognized at common law, and continues to command "near unanimity ... among state and federal jurists...." Notwithstanding our admonishment that punishment fit the offender, we too recognize the legitimacy of considering general deterrence in passing sentence.
*Nevertheless, deterrence as a sentencing rationale is subject to limitation. Tailoring punishment to the individual criminal may reduce the efficacy of deterrence, but that reduction is an inevitable cost of a system that eschews mechanistic punishment. General deterrence is a legitimate aim, but it has never been the sole aim in imposing sentence.* (emphasis added)

Following the principles in *Barker*, supra 771 F.2d 1362, case law stresses that a sentencing court must find the balance between general deterrence and the imperative of individualized sentencing. The 2025 amendments to the U.S. Sentencing Guidelines encourage a focus on an individualized approach to sentencing and the adoption of variances in lieu of departures. Judges are urged to consider the unique circumstances of each case and the defendant within the framework of the guidelines notwithstanding the factor of general deterrence.

## CONCLUSION

Mr. Williams' letter to this Court, the letters of his friends and family, and his conduct in this case clearly show a man who admitted responsibility, is deeply repentant and who has started a new chapter in his life. He is working every day to show that he is no longer the man who made the grave mistakes that have brought him before this Court. He has demonstrated self-improvement, a fundamental change in attitude and a law-abiding lifestyle in his work and his relationships. His actions and his words show his commitment to reform and his sincere repentance.

SENTENCING MEMORANDUM
UNITED STATES VS. MANLY WILLIAMS, CR. 23-267-JSW

The Supreme Court has noted that probation is not "an act of leniency" but a "substantial restriction of freedom." *Gall, supra* at 44. Probation for three years is still a restraint on Mr. Williams' freedom. A focus on the conviction offense conduct would ignore the "most up-to-date picture" of a defendant's history and characteristics, which in turn sheds light on whether a defendant will be deterred from committing another crime. *Pepper v. United States*, 562 U.S. 476 at 492 (2011) (quoting 18 U.S.C.§3553(a)(1)).

Some individuals and their offense conduct do warrant prison sentences. However, for individuals who do everything in their power to change their conduct and make amends for their misdeeds our legal system must acknowledge their efforts and not impose custodial sentences.

Prosecutions of sworn peace officers who violate the law are rare, and a message must be sent that such conduct will never be tolerated. To Mr. Williams credit as soon as he was arrested, he knew the path he had to take. There was minimal if any discussion of the pros or cons of such a decision. A sentence of custody will end his job and his new career. It will say to him that regardless of his efforts towards rehabilitation, he must still be punished with incarceration. That would be a mistake in this case. We submit that Timothy Manly Williams has earned the privilege of probation.

Date: January 6, 2026                              Respectfully submitted,


                                                   /s/_____
                                                   RANDY SUE POLLOCK
                                                   Counsel for defendant Timothy Allen Manly Williams