CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
ALETHEA M. SARGENT (CABN 288222)
Assistant United States Attorneys

> 1301 Clay Street, Suite 340S
> Oakland, California 94612
> Telephone: (510) 637-3680
> FAX: (510) 637-3724
> eric.cheng@usdoj.gov
> alethea.sargent@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>TIMOTHY ALLEN MANLY WILLIAMS,<br><br>      Defendant. | CASE NO.    4:23-CR-00267 JSW<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND § 5K1.1 MOTION BASED UPON SUBSTANTIAL ASSISTANCE TO AUTHORITIES** |

## I.    INTRODUCTION

In May 2021, the Antioch Police Department ("APD") discovered during a routine audit something surprising: their own police officer, Timothy Manly Williams, had called a subject of a wiretap he was monitoring.  From all appearances, he had intentionally burned the wire and attempted to cover it up.  A sprawling federal investigation would eventually result in various criminal charges against ten Antioch or Pittsburg Police Department ("PPD") officers or employees, including Manly Williams.

In August 2023, Manly Williams was indicted for his concealment of that call during the wiretap, which constituted criminal falsification of records and obstruction of justice, as well as for his unconstitutional destruction of a citizen's cell phone following his then-roommate APD Officer Morteza Amiri's release of a police canine to bite a suspect.

By September 2023, Manly Williams had already met with the government a first time.  By November 2023, he had promptly pleaded guilty to his crimes.  In March 2025, he testified in the jury trial involving that same former roommate regarding another dog bite for which he was present, and Amiri's concealment of facts surrounding that bite.  He also admitted to additional criminal conduct not specifically referenced in the indictments.

Manly Williams' crimes were very serious, particularly given his role as a police officer sworn to uphold the law and protect his fellow citizens.  However, his immediate acceptance of responsibility and cooperation with the government was also very significant, particularly given that same role, and the government accordingly moves for a downward variance pursuant to § 5K1.1 for his substantial assistance to authorities.

Based on the nature and circumstances of the serious offenses, the defendant's history and characteristics (including his role as a sworn police officer), the need for deterrence, and the need to avoid unwarranted sentence disparities given the sentences already imposed by this Court, as well as the government's motion for the equivalent of a five-level downward departure pursuant to § 5K1.1, the government recommends that the Court impose a sentence of six months' custody, followed by three years of supervised release, and 100 hours of community service.  This proposed sentence is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a)(2).

## II.    BACKGROUND

### A.    Factual Background

Timothy Allen Manly Williams was previously employed as a police officer with APD in the city of Antioch, California, including between March and May 2021.  PSR ¶ 6.  On approximately March 23, 2021, Manly Williams was working on a wiretap operation related to a gang-related murder that occurred in Antioch, and which was being investigated by APD with assistance from federal agencies, including the Federal Bureau of Investigation ("FBI").  PSR ¶ 6.

Shortly after 9:00 p.m. on March 23, 2021, while on duty as a monitor in the wire room, Manly Williams dialed a target of the wire that he was monitoring, "TT-09," using his personal mobile phone.  PSR ¶ 7.  According to Manly Williams, he dialed the target of the wire in an attempt to cause the target to end an active, lengthy phone call that had no relevance to the subject of the wiretap investigation.  PSR ¶ 7.  Prior to dialing TT-09, Manly Williams dialed "*67."  PSR ¶ 7.  He dialed "*67" in an attempt to prevent his mobile information from being revealed.  PSR ¶ 7.  Manly Williams also took steps to prevent the wiretap monitoring equipment from recording any audio associated with his call— specifically by initiating his call while TT-09 was on another call and continuing to direct the monitoring equipment to monitor TT-09's prior call after the call he made was answered, PSR ¶ 7, which prevented audio from being recorded because the wiretap equipment could not simultaneously record two calls.  The call connected with audio, and Manly Williams heard TT-09's voice.  PSR ¶ 7.

After calling TT-09, despite his attempt to prevent the wiretap monitoring equipment from detecting his own phone number, Manly Williams saw that his phone's information was displayed on the wiretap monitoring equipment.  PSR ¶ 8.  He subsequently tagged the call as "non-pertinent," and he wrote in the wire log records as part of the call synopsis information that there was "[n]o audio" and that there was "no answer."  PSR ¶ 8.  Manly Williams knew that these descriptions were false.  PSR ¶ 8.  Specifically, he knew the call was answered, and that there was audio, because he heard TT-09's voice.  PSR ¶ 8.  Manly Williams also failed to include in the descriptions that the call to TT-09 was initiated by himself, which was a material omission.  PSR ¶ 8.

The steps Manly Williams took to cover up his act of calling TT-09 were intended to impede and obstruct an investigation and proper administration of a matter within the jurisdiction of the FBI, an

1  agency of the United States (*e.g.*, an investigation into his own conduct as obstruction or witness

2  tampering).  PSR ¶ 9.  Manly Williams' actions to conceal his own call were also an attempt to obstruct

3  and impede and in fact did obstruct and impede an official proceeding, that is, a federal grand jury

4  investigation pertaining to his own actions, and that he acted corruptly.  PSR ¶ 9.

5       Shortly after Manly Williams's obstructive conduct in the wire room, on approximately May 6,

6  2021, Manly Williams was on duty and in uniform for APD on scene following an incident wherein

7  Morteza Amiri, another APD police officer and Manly Williams's then-roommate, had deployed a

8  police dog in the course of arresting a person.  PSR ¶ 10.  Also present was Victim-1, who appeared to

9  be recording the aftermath of the incident with a cellular telephone.  PSR ¶ 10.  Manly Williams

10  willfully knocked the cellular telephone out of Victim-1's hand with force so that the cellular telephone

11  hit the ground and was destroyed.  PSR ¶ 10.  Manly Williams had no constitutional basis on that date to

12  knock the cellular telephone out of Victim-1's hand, and he therefore deprived Victim-1 of Victim-1's

13  right to be secure against unreasonable searches and seizures of property by one acting under color of

14  law.  PSR ¶ 10.

15       The government's investigation also revealed other relevant criminal conduct, which Manly

16  Williams admitted carrying out, including:

17  •    While employed as a police officer with PPD and APD, Manly Williams illegally

18     purchased anabolic steroids, Schedule III controlled substances, from PPD Officer Patrick

19     Berhan and APD Officer Daniel Harris.  PSR ¶ 12.

20  •    While employed as a police officer with PPD and APD, Manly Williams misused

21     confidential law enforcement databases by performing searches for the benefit of himself or

22     friends without a proper law enforcement purpose.  PSR ¶ 13.  For instance, in approximately

23     December 2020 he searched for the criminal history of his friend for no legitimate law

24     enforcement purpose; and in approximately February 2021 he searched or caused law

25     enforcement databases to be searched for warrants for no legitimate law enforcement purpose.

26     PSR ¶ 13.

27  •    While employed as APD police officers, Manly Williams and APD Officer Morteza

28     Amiri illegally took marijuana and/or marijuana products seized from APD law enforcement

activity, including in approximately December 2020 when Amiri stated to Manly Williams, "i got a basketball size bag of weed in my trunk." PSR ¶ 14. Instead of filing reports with APD on the seizures of marijuana or submitting the marijuana into evidence, Amiri and Manly Williams personally consumed the marijuana in violation of APD policy and, in at least one instance in approximately November 2020, Manly Williams arranged for the sale of such marijuana and received proceeds from its sale. PSR ¶ 14.

- While employed as an APD police officer, Manly Williams illegally facilitated the removal or dismissal of traffic tickets for the benefit of himself, friends, or colleagues without a proper law enforcement purpose, including in approximately October 2020 via other APD officers in which the recipient of a ticket provided tequila bottles in exchange for those officers not appearing in court for a traffic ticket, and in approximately April 2021 at the behest of a PPD, who requested that a particular traffic ticket be disregarded. PSR ¶ 15.

- While employed as an APD police officer, Manly Williams wrongfully posted law enforcement-sensitive information to his Instagram account using the story feature to "close friends" who were outside the law enforcement community. PSR ¶ 16.

**B.    Procedural History**

Manly Williams was charged in a three-count Indictment on August 16, 2023 with violations of 18 U.S.C. § 1519 – Destruction, Alteration, and Falsification of Records in Federal Investigations (Count One); 18 U.S.C. § 1519(c)(2) – Obstruction of Official Proceedings (Count Two); and 18 U.S.C. § 242 – Deprivation of Rights Under Color of Law (Count Three).

On November 28, 2023, Manly Williams pleaded guilty to all counts of the Indictment. Sentencing is currently set for January 13, 2026, at 1:00 p.m., before the Honorable Jeffrey S. White, Senior United States District Judge.

Manly Williams was also separately charged in two separate complaints filed in the Contra Costa Superior Court on August 18, 2023, Case Numbers 01-23-02621 and 01-23-02626, with Conspiracy to Commit an Act Injurious to Public, in violation of Penal Code § 182(a)(5), and Accepting a Bribe, in violation of Penal Code § 68, for facilitating bribes to ensure two separate traffic tickets did not result in convictions. He pleaded guilty in both cases on December 21, 2023.

C.    **Criminal History**

Manly Williams has no previous arrests and does not have criminal convictions resulting in any Criminal History Points, placing him in Criminal History Category I.  *See* PSR ¶¶ 43–48.

D.    **Guidelines Calculation**

The government agrees with the Sentencing Guidelines calculation of the United States Probation Office, prior to any motion by the government under § 5K1.1.  PSR ¶¶ 21-41.

In sum, the base offense level of Count Group 1 is 14, pursuant to U.S.S.G. § 2J1.2(a), and a two-level enhancement pursuant to U.S.S.G. § 2J1.2(b)(3)(B) applies because the offense involved the selection of any essential or especially probative record, document, or tangible object, to destroy or alter. The base offense level of Count Group 2 is 10, pursuant to U.S.S.G. § 2H1.1(a)(3)(b), and a six-level enhancement pursuant to U.S.S.G. § 2H1.1(b)(1)(B) applies because the offense was committed under color of law.  Following a multiple count adjustment, the Combined Offense Level is 18, and a three-level reduction pursuant to U.S.S.G. § 3E1.1 applies based on the defendant's Acceptance of Responsibility.

An offense level of 15 with a Criminal History Category I yields an advisory sentencing range of **18 to 24 months** of imprisonment.  PSR ¶ 71.

E.    **Timeline of Convictions and Sentencings in the Related Antioch & Pittsburg Cases**

The status of sentencing of the defendants in these related cases is as follows:

- <u>*Timothy Manly Williams*</u> – *pleaded guilty on November 28, 2023 to falsification of records, obstruction of official proceedings, and deprivation of rights under color of law; sentencing pending;*

- <u>Samantha Genoveva Peterson</u> – pleaded guilty on January 9, 2024 to conspiracy to commit wire fraud; sentenced to time served, 3 years of supervised release, 100 hours of community service;

- <u>Patrick James Berhan</u> – pleaded guilty on March 26, 2024 to conspiracy to commit wire fraud, wire fraud, and possession with intent to distribute anabolic steroids; sentenced to 30 months of custody, 2 years supervised release;

- <u>Ernesto Mejia-Orozco</u> – pleaded guilty on June 11, 2024 to conspiracy to commit wire fraud and wire fraud; sentenced to 3 months of custody, 3 years of supervised release, 100 hours of community service;

- <u>Brauli Jalapa Rodriguez</u> – pleaded guilty on June 25, 2024 to conspiracy to commit wire fraud and wire fraud; sentenced to 3 months of custody, 3 years supervised release, 100 hours of community service;

- <u>Amanda Carmella Theodosy a/k/a Nash</u> – pleaded guilty on July 30, 2024 to conspiracy to commit wire fraud and wire fraud; sentenced to 3 months of custody, 3 years supervised release, 50 hours of community service;

- <u>Morteza Amiri</u> – convicted at trial on August 8, 2024 for conspiracy to commit wire fraud and wire fraud, and convicted at trial on March 14, 2025 for deprivation of rights under color of law and falsification of records; sentenced to 84 months of custody, 3 years supervised release;

- *<u>Daniel James Harris</u> – pleaded guilty on September 17, 2024 to conspiracy to distribute and possess with intent to distribute anabolic steroids, attempt and possession with intent to distribute anabolic steroids, and bank fraud; sentencing pending;*

- *<u>Eric Allen Rombough</u> – pleaded guilty on January 14, 2025 to conspiracy against rights and deprivation of rights under color of law; sentencing pending;*

- <u>Devon Christopher Wenger</u> – convicted at trial on April 30, 2025 for conspiracy to distribute and possess with intent to distribute anabolic steroids and destruction of records, and convicted at trial on September 18, 2025 for conspiracy against rights; sentenced to 90 months of custody, 3 years supervised release.

## III.    DISCUSSION

### A.    Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the

1  appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive

2  reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991–93.

3        Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court

4  should consider these factors applicable to this case, among others:

5      (1)   the nature and circumstances of the offense and the history and
               characteristics of the defendant;

6

7      (2)   the need for the sentence imposed to reflect the seriousness of the
               offense, to promote respect for the law, and to provide just
               punishment for the offense;

8

9      (3)   the need for the sentence imposed to afford adequate deterrence to
               criminal conduct;

10     (4)   the need to avoid unwarranted sentence disparities among
               defendants with similar records who have been found guilty of

11              similar conduct; and

12     (5)   the need to avoid unwarranted sentence disparities among
               defendants with similar records who have been found guilty of

13              similar conduct.

14        Under U.S.S.G. § 5K1.1, upon motion of the government stating that the defendant has provided

15  substantial assistance in the investigation or prosecution of another person who has committed an

16  offense, a sentence that is below the otherwise applicable guideline range may be appropriate.  The

17  appropriate reduction shall be determined by the court for reasons stated that may include, but are not

18  limited to, consideration of the following:

19     (1)   the court's evaluation of the significance and usefulness of the
               defendant's assistance, taking into consideration the government's

20              evaluation of the assistance rendered;

21     (2)   the truthfulness, completeness, and reliability of any information or
               testimony provided by the defendant;

22

23     (3)   the nature and extent of the defendant's assistance;

24     (4)   any injury suffered, or any danger or risk of injury to the defendant
               or his family resulting from his assistance; and

25     (5)   the timeliness of the defendant's assistance.

26  **B.**    **Substantial Assistance to Authorities and Motion for Variance Under § 5K1.1**

27  The government moves the Court pursuant to § 5K1.1 for a variance that is the equivalent of a

28

five-level downward departure based on Manly Williams' substantial assistance to authorities.[1]

On the same day that Manly Williams was indicted in this case, Defendants Morteza Amiri, Eric Allen Rombough, and Devon Christopher Wenger were charged with conspiracy against rights in violation of 18 U.S.C. § 241, along with one or more specific instances of deprivation of rights under color of law in violation of 18 U.S.C. § 242, in a related case.  *See* 23-CR-269 JSW.  Manly Williams, through his attorney, approached the government almost immediately after indictment about pleading guilty and cooperating with the government.  Indeed, within approximately two months of having been indicted, he had already met with the government twice, taking full accountability for his actions and providing complete information about his own charged crimes—as well as answering the government's questions about other criminal conduct, including his own and that of others.  He agreed to cooperate with the government and entered a plea agreement on November 28, 2023, just over three months after his indictment.

Amiri and Wenger began trial together in March 2025, but on the third day, prior to Manly Williams' testimony, Wenger's counsel requested a mistrial as to Wenger due to her claim of ineffective assistance of counsel.  (Wenger was tried alone in September 2025.)  Manly Williams proceeded to testify at the March 2025 trial, providing testimony related to the dog bite of A.A., a specific use of force by Amiri charged as a deprivation of rights under color of law, and Amiri's falsification of reports on that incident stating that Amiri was alone when he deployed the canine.  In preparation for the trial at which he testified, Manly Williams met again with the government twice.  He then testified for

---

[1] Although departures have been removed from the Sentencing Guidelines as of the 2025 amendments, including with respect to § 5K1.1, the government's motion is made in the context of a "departure" to be implemented as a variance, given that the Guidelines describe the intent of the change to actually be "outcome neutral."  *See* U.S.S.G. § 1 ("The Commission sought to make these changes to better align the requirements placed on the court and acknowledge the growing shift away from the use of departures provided for within the Guidelines Manual in the wake of *Booker* and subsequent decisions. **The Commission envisioned and framed this 2025 amendment to be outcome neutral.** As such, the removal of departures from the Guidelines Manual does not reflect a determination by the Commission that the rationale underlying the deleted departure provisions is no longer informative or that a court should no longer consider such facts for purposes of determining the appropriate sentence. **The removal of departures does not limit the information courts may consider in imposing a sentence and it is the Commission's intent that judges who would have relied upon facts previously identified as a basis for a departure will continue to have the authority to rely upon such facts to impose a sentence outside of the applicable guideline range as a variance** under 18 U.S.C. § 3553(a)." (emphases added)).

1    approximately two and a half hours before the jury.  He also met with the government in July 2025,

2    prior to Wenger's retrial, and remained available to testify in that trial.

3        Manly Williams's testimony was significant.  Although Amiri had stated to numerous

4    individuals via text message that Manly Williams was present at the dog bite of A.A., Manly Williams

5    testified to confirm that he was, indeed, present at that incident and watched it happen.  Among other

6    things, he also testified as to his view of the situation: that Amiri had been *looking* for trouble that night

7    and that they were not, in fact, in any actual danger despite the deployment of a canine.  At the close of

8    Amiri's trial, the jury convicted Amiri of violating 18 U.S.C. § 242 for his conduct in the A.A. incident

9    and a related count of violating 18 U.S.C. § 1519; he was acquitted of other charges.

10       Manly Williams was also truthful and complete in his account of events.  He admitted his own

11   criminal conduct in the wire room with a simple explanation, and the government has not determined

12   any more sinister motive.  He admitted to his unconstitutional destruction of a citizen's cell phone

13   following Amiri's release of his canine to bite a suspect.  And Manly Williams admitted his conduct as

14   to multiple other crimes, including his and Amiri's theft of marijuana for sale, the taking of bribes in

15   exchange for the dismissal of or officers' non-appearance for traffic tickets, and the misuse of criminal

16   history records.

17       Manly Williams's assistance was extensive.  In advance of the trial at which he testified, Manly

18   Williams met with the government multiple times.  He testified for approximately two and a half hours.

19   He also met with the government again prior to Wenger's retrial to testify again, although pretrial

20   rulings ultimately rendered his potential testimony inadmissible.

21       Manly Williams took risks by cooperating with the government.  Manly Williams' plea

22   agreement was filed under seal but was provided to the defendants in discovery and, given Manly

23   Williams's trial testimony, his cooperation is now in the public record.  Following Amiri's convictions

24   at his second trial, the government presented evidence to this Court that Amiri was a danger to the

25   community in part based on his volatile and threatening behavior toward his police leadership and others

26   he viewed as having wronged him.  Although the Court detained Amiri pending sentencing, Manly

27   Williams could fall into this category as well given his testimony during Amiri's trial.  The government

28   believes that Manly Williams' cooperation and testimony in the trial of another police officer is a

1    significant factor to be taken into consideration in his sentencing.

2        At bottom, based on Manly Williams's substantial assistance to authorities as set forth above, the

3    government moves this Court for a variance that is the equivalent of a five-level downward departure

4    pursuant to § 5K1.1.  This downward variance would result in an offense level of 10, which with a

5    Criminal History Category I would yield a sentencing range of **6 to 12 months** of imprisonment.

6        **C.    Recommendation**

7        The government respectfully recommends that the Court impose a sentence of six months of

8    custody—at the low end of the post-variance Guidelines range—followed by three years of supervised

9    release and 100 hours of community service, based upon a consideration of the Guidelines, 18 U.S.C.

10   § 3553(a), and § 5K1.1 factors.

11       Manly Williams's history and characteristics support the government's recommended sentence.

12   Unlike many others that come before this Court, Manly Williams was a public servant sworn to uphold

13   the rule of law.  It is from this position that Manly Williams concealed his crimes.  These crimes were

14   also undoubtedly serious: his illicit contact and concealment concerning a wiretap subject in a murder

15   investigation, his unconstitutional destruction of a private citizen's property stopping the recording of

16   police conduct involving a dog bite, and other relevant criminal conduct involving violations of the

17   power he held as a police officer.  The government's recommended sentence would serve as general

18   deterrence to others in positions of public trust—particularly sworn police officers—from committing

19   such crimes.  As with the other defendants in the related cases, this Court's sentence should send a

20   message to those who also may be tempted to commit such crimes.  The government's recommended

21   sentence also would avoid sentencing disparities with defendants who have been found guilty of similar

22   conduct.  To assist the Court's consideration of sentencing parity, the government has, above, detailed

23   for the Court all prior sentences in these related cases, all of which have resulted in custodial sentences

24   except for Samantha Peterson (a non-sworn officer who promptly pleaded guilty).

25       With all this in mind, the government has also recommended a considerable downward variance

26   to account for Manly Williams' *post-offense* conduct and cooperation with authorities.  Manly Williams

27   immediately accepted responsibility for his actions and provided assistance to the overarching

28   investigation by approaching the government shortly after his indictment with a desire to cooperate.  He

pleaded guilty months before the next defendant to plead guilty in open court, Samantha Peterson, and his early, fulsome, and consistent information assisted the government throughout its preparations for trial. And the testimony Manly Williams provided to the jury contributed key insight against his friend and former roommate in a trial concerning Amiri's brutal violations of citizens' right to be free from excessive force by a police officer.

Finally, the government also recommends the Court order a three-year term of supervised release for Manly Williams with the conditions recommended in the PSR, as well as with the same 100 hours of community service that this Court also required of other defendants including Peterson, Mejia-Orozco, and Jalapa Rodriguez. The expanded suspicionless search condition agreed to by the parties is appropriate to serve the interests of specific deterrence and rehabilitation given Manly Williams' use of electronic devices and wire communications in his crimes.

**IV.    CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of six months of imprisonment, followed by three years of supervised release with the agreed-upon expanded suspicionless search condition and other conditions recommended in the PSR, and 100 hours of community service.


DATED:  January 6, 2026                                    Respectfully submitted,

                                                           CRAIG H. MISSAKIAN
                                                           United States Attorney


                                                           _____/s/_____
                                                           ERIC CHENG
                                                           ALETHEA M. SARGENT
                                                           Assistant United States Attorneys